UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JIMMIE LEE BROOKS and ANGELE               CIVIL ACTION
FLEMMING BROOKS


VERSUS                                     NO: 11-67


FLAGSTAR BANK, FSB, DEAN                    SECTION: R(1)
MORRIS, LLP, CANDACE A.
COUTREAU, DOES 1 THROUGH 10,
ABC INSURANCE COMPANY, and
XYZ INSURANCE COMPANY


**ORDER AND REASONS**

In this foreclosure case, defendants Dean Morris, LLP and Candace Courteau's have filed a motion to dismiss.[1]  Because plaintiffs have failed to state a claim against defendants, defendants' motion is GRANTED IN PART and DENIED IN PART.


**I.    Background**

This case concerns the foreclosure of plaintiffs' home in New Orleans, Louisiana.  Plaintiffs Jimmie Lee Brooks and Angele Flemming Brooks purchased the property on May 8, 2007 and financed the mortgage with defendant Flagstar Bank.  On May 6, 2008, Dean Morris, LLP and Candace Courteau filed a Petition to Enforce Security Interest by Executory Process in the Civil District Court for the Parish of Orleans on behalf of their

---

[1]    R. Doc. 5.

client Flagstar.[2]  In the petition, Flagstar alleged that Jimmie
and Angele Brooks had defaulted on the note and mortgage.  The
Civil District Court then granted Flagstar's petition,[3] and the
Orleans Parish Sheriff issued a writ of seizure and sale.[4]  On
July 29, 2010, Flagstar bought the property at public sale for
$213,334.00.

On January 13, 2011, plaintiffs filed this action, asserting
numerous causes of action against Flagstar, Dean Morris,
Courteau, and unidentified parties.[5]  Plaintiffs assert that
Flagstar did not have the right to foreclose on the property and
that defendants' actions before and after the foreclosure
violated numerous federal and state laws.  Plaintiffs bring the
following causes of action against Dean Morris, LLP and Candace
Courteau: (1) Fair Debt Collection Practices Act, (2) Federal
Unfair Trade Practices, (3) Abuse of Executory Process, (4) Bad
Faith, (5) Deceit, (6) Breach of Duty of Good Faith and Fair
Dealing, (7) Justifiable Reliance, (8) Louisiana Unfair Trade
Practices, (9) Negligence, (10) Fraud, and (11) Conspiracy.  Dean
Morris, LLP and Courteau now move to dismiss all of the claims
against them.  Plaintiffs have not responded to the motion.

---

[2]   R. Doc. 5, Ex. 1.

[3]   R. Doc. 1, ¶99.

[4]   R. Doc. 5, Ex. 2.

[5]   R. Doc. 1.

**II.   Standard**

*A.   Rule 12(b)(1)*

Defendants argue that the Court cannot hear plaintiffs'
claims under the *Rooker-Feldman* doctrine, which limits the
Court's subject matter jurisdiction.  *See Exxon Mobil Corp. v.
Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (*Rooker-
Feldman* doctrine implicates subject matter jurisdiction).  Fed.
R. Civ. P. 12(b)(1) requires dismissal of an action if the court
lacks jurisdiction over the subject matter of the plaintiff's
claim.  Motions submitted under that rule allow a party to
challenge the court's subject-matter jurisdiction based upon the
allegations on the face of the complaint.  *Barrera-Montenegro v.
United States*, 74 F.3d 657, 659 (5th Cir. 1996); *see also Lopez
v. City of Dallas*, No. 03-2223, 2006 WL 1450420, at *2 (N.D. Tex.
May 24, 2006).

In ruling on a Rule 12(b)(1) motion to dismiss, the court
may rely on (1) the complaint alone, presuming the allegations to
be true, (2) the complaint supplemented by undisputed facts, or
(3) the complaint supplemented by undisputed facts and by the
court's resolution of disputed facts.  *Den Norske Stats
Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.
2001); *see also Barrera-Montenegro,* 74 F.3d at 659.  When
examining a factual challenge to subject-matter jurisdiction that
does not implicate the merits of plaintiff's cause of action, the

3

district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver*, *Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261. A court's dismissal of a case for lack of subject-matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

B.   *Rule 12(b)(6)*

Plaintiffs also move to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when a plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiffs. *Lormand v.*

4

*U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true.  *Id*.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Twombly*, 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.  *Lormand*, 565 F.3d at 255-57.  If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

In deciding a motion to dismiss for failure to state a claim, a court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion to dismiss that are referred to plaintiffs' complaint and are central to their claim.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Thus, the Court

will consider documents attached to the motion to dismiss that
are central to the state court foreclosure proceeding.

## III. Discussion

A.   *Rooker-Feldman Doctrine*

Under the *Rooker-Feldman* doctrine, federal district courts
lack jurisdiction to hear collateral attacks on state court
judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415
(1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476, 482
(1983). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544
U.S. 280 (2005), the Supreme Court clarified that the *Rooker-
Feldman* doctrine applies only to "cases brought by state-court
losers complaining of injuries caused by state-court judgments
rendered before the district court proceedings commenced and
inviting district court review and rejection of those judgments."
*Id*. at 284. In such cases, federal courts lack subject matter
jurisdiction.

This doctrine does not bar only review of claims actually
raised in state court proceedings. "If the district court is
confronted with issues that are 'inextricably intertwined' with a
state judgment, the court is 'in essence being called upon to
review the state-court decision,' and the originality of the
district court's jurisdiction precludes such a review." *United
States v. Shepherd*, 23 F.3d 923 (5th Cir. 1994) (quoting *Feldman*,

6

460 U.S. at 482 n. 16).  On the other hand, the *Rooker-Feldman* doctrine does not preclude a district court's jurisdiction over a plaintiff's "independent claim," even "one that denies a legal conclusion that a state court has reached."  *Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Defendants argue that plaintiffs' entire complaint should be dismissed under the *Rooker-Feldman* doctrine.  In support of their argument, defendants have provided their state court petition to enforce the security interest by executory process, their draft order commanding the sheriff to issue the writ of seizure and sale, and the writ signed by the sheriff.  Defendants have not provided the state court's order itself, but plaintiffs affirmatively allege in their petition that the state court issued such an order.[6]  Indeed, such an order must have been issued for the sheriff to issue the writ of seizure and sale. *See* La. Code Civ. Proc. art. 2638 ("If the plaintiff is entitled thereto, the court shall order the issuance of a writ of seizure and sale commanding the sheriff to seize and sell the property . . . .").  Thus, the Court will assume that the state court issued such an order and apply the *Rooker-Feldman* doctrine accordingly.

Although further state court proceedings could have taken place after the state court's order to issue the writ of seizure

---

[6]    R. Doc. 1, ¶99.

and sale,[7] there is no indication that any such proceedings took place in this case.  Thus, it appears that the state court litigation has ended, which means that the state court judgment is a final order that cannot be appealed to this Court under the *Rooker-Feldman* doctrine.  *See Exxon Mobil*, 544 U.S. at 293 (*Rooker-Feldman* doctrine applies when "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment"); *see also Carter v. Deutche Bank Nat. Trust Co.*, 2010 WL 3074323, at *2 (E.D.La. Aug. 2, 2010) (applying *Rooker-Feldman* doctrine to state court order to issue writ of seizure and sale); *cf. LAC Real Estate Holdings, L.L.C. v. Biloxi Marsh Lands Corp.*, 320 Fed.Appx. 267, 270 (5th Cir. 2009) (*Rooker-Feldman* doctrine did not apply when "state court proceedings are still pending and no final judgment has been rendered"); *Storyville Dist. New Orleans, LLC v. Canal Street Development Corp.*, No. 10-1694, 2011 WL 1192985 (E.D.La. Mar. 28, 2011) (thoroughly reviewing this topic and concluding that "the unfinished and ongoing posture of the state court appellate process . . . presents a procedural obstacle to the defendants' invocation of *Rooker–Feldman*").

---

[7]     *See, e.g.*, La. Code Civ. Proc. art. 2751 (defendant in executory proceeding may move to enjoin seizure and sale).

8

Certain of plaintiffs' claims would require the Court to review the state court judgment ordering issuance of the writ of seizure and sale, or are inextricably intertwined with that judgment, and the Court lacks jurisdiction over those claims.  In Count IX of the complaint, plaintiffs allege that defendants abused the executory process by failing to meet the requirements for such process under Louisiana law.  For example, defendants allegedly failed to serve plaintiffs with proper notice of the foreclosure or with proper demand for the default amount.  Plaintiffs allege that because of these deficiencies, the issuance of the writ of seizure and sale was improper.[8]  Likewise, plaintiffs allege in Count X of the complaint that defendants abused the executory process in bad faith.  These claims constitute direct attacks on the state court judgment and seek a thorough review of state court foreclosure procedures.  The Court lacks jurisdiction to undertake such a review, and these claims must be dismissed.

Plaintiffs' other claims, however, do not appear to be barred under the *Rooker-Feldman* doctrine.  First, in Count VI, plaintiffs bring a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*.  In this claim, plaintiffs allege that defendants failed to provide documentation of the debt upon request, improperly threatened plaintiffs with

---

[8]     *Id.* at ¶208.

immediate eviction, attempted to force plaintiffs to vacate the premises before a required ninety-day period had expired, and harassed plaintiffs by repeatedly sending threatening letters. Plaintiffs seek actual damages, statutory damages, and attorney's fees and costs under the FDCPA.[9]  Courts addressing this issue have ruled that "when the FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, the FDCPA claim is independent from the state court collection action and the federal court has subject matter jurisdiction over that FDCPA claim." *Naranjo v. Universal Sur. of America*, 679 F.Supp.2d 787, 794. (S.D.Tex. 2010) (quoting *Druther v. Hamilton*, No. C09-5503, 2009 WL 4667376, at *4 (W.D. Wash. Dec. 3, 2009)); *see also Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (FDCPA claims did not allege injuries caused by the state court judgment); *Jenkins v. Gen. Collection Co.*, 538 F.Supp.2d 1165, 1172 (D.Neb. 2008) (state court judgment did not involve FDCPA issues); *Senftle v. Landau*, 390 F.Supp.2d 463, 469 (D.Md. 2005) (FDCPA claim related to manner of debt collection, not validity of underlying debt). Even if plaintiffs could have raised FDCPA issues in the state court proceedings, the FDCPA claims are independent from the actual state court litigation. *Jenkins*, 538 F.Supp.2d at 1172. Plaintiffs' FDCPA claims do not have the sole purpose of

---

[9]    R. Doc. 1 at ¶166.

challenging the state court's foreclosure order.  *Cf. Flores v. Citizens State Bank of Roma, Texas*, 132 F.3d 1457, 1997 WL 803150, at *1 (5th Cir. 1997) (federal court lacked jurisdiction when "sole purpose" of action was to challenge state court's foreclosure and seizure of property).  Thus, the Court has jurisdiction over plaintiffs' FDCPA claims.

The Court also has jurisdiction over plaintiffs' remaining claims.  Like plaintiffs' FDCPA claims, their claims for fraud, deceit, conspiracy, negligence, reliance, and unfair trade practices under Louisiana and federal law seek damages, beyond rescission of the foreclosure, for defendants' alleged misrepresentations and other wrongful behavior.  The basis of some of these claims is not entirely clear, as discussed *infra*, but it does not appear that all of these claims challenge the state court's foreclosure order.  Thus, the Court has jurisdiction over these claims to the extent that they do not stem from the foreclosure order.  *See Easley v. New Century Mortg. Corp.*, 394 Fed.Appx. 946, 948 (3d Cir. 2010) (court lacked jurisdiction over fraud, deception, and unfair trade practices claims to the extent that the damages plaintiff claimed arose out of the foreclosure judgment itself, but the *Rooker-Feldman* doctrine did not bar claims for additional damages).  The Court must therefore consider whether plaintiffs have adequately stated these claims under Rule 12(b)(6).

B.   *Fair Debt Collection Practices Act*

Plaintiffs allege that defendants Dean Morris, LLP and Courteau violated the FDCPA by failing to provide documentation of the debt, threatening plaintiffs with immediate eviction, attempting to force plaintiffs to vacate the premises before the required ninety-day period, and harassing plaintiffs by repeatedly sending threatening letters.  These actions, according to plaintiffs, violated 15 U.S.C. §§ 1692d, 1692e, 1692e(5), 1692e(7), 1692e(10), and 1692f.  In response, defendants argue that their actions to enforce their client's security interest fall outside the scope of the FDCPA except for the provisions of § 1692f(6).  Defendants also argue that plaintiffs have not alleged sufficient facts to support their FDCPA claims.

The FDCPA seeks to eliminate "abusive, deceptive, and unfair debt collection practices" by regulating the type and number of contacts a "debt collector" can make with a debtor.  *See* 15 U.S.C. § 1692(a).  The FDCPA defines "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

12

15 U.S.C. § 1692a(6).  The FDCPA regulates debt collectors by, *inter alia*, prohibiting harassment or abuse in connection with the collection of a debt, § 1692d, prohibiting false or misleading representations in connection with the collection of a debt, § 1692e, and prohibiting unfair or unconscionable means to collect a debt, § 1692f.  Section 1692f(6) in particular places limits on the enforcement of security interests.

Defendants assert that they are not debt collectors under § 1692a(6), except for purposes of § 1692f(6), because they initiated foreclosure proceedings to enforce a security interest. *See, e.g.*, *Rosado v. Taylor*, 324 F.Supp.2d 917, 926 (N.D. Ind. 2004) (FDCPA does not apply to foreclosure proceedings, apart from § 1692f(6)).  The Fifth Circuit, however, has rejected this view.  In *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006), the defendant, an attorney hired to conduct an executory process foreclosure, argued that because he was enforcing a security interest, he was not a debt collector under the FDCPA except for purposes of § 1692f(6).  The Fifth Circuit disagreed, noting that under § 1692a(6), "a party's general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector."  *Id.* at 529.

Plaintiffs assert that defendants Dean Morris, LLP and Courteau are "debt collectors" under § 1692a(6).[10]  Neither the

_____

[10]    R. Doc. 1 at ¶156-57.

plaintiffs nor the defendants discuss whether the defendants regularly collect debt in their business activities. *See Brown v. Morris*, 243 Fed.Appx. 31, 35 (5th Cir. 2007) (citing *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997)) ("whether a party 'regularly' attempts to collect debts is determined . . . by the volume or frequency of its debt collection activities").   In *Kaltenbach*, however, the court made clear that a defendant who enforces security interests may be a debt collector under the general definition of § 1692a(6).   At this stage, plaintiffs' allegations that defendants are debt collectors under the statute are sufficient.

Additionally, the Fifth Circuit in *Kaltenbach* left open the question of whether a defendant who meets the general definition of a debt collector under § 1692a(6) and initiates the foreclosure of a security interest is engaged in collecting a debt for purposes of the FDCPA's substantive provisions other than § 1692f(6).   464 F.3d at 529 n.5.[11]   This Court need not address that question at present.   Plaintiffs allege that defendants acted wrongfully not by initiating the foreclosure proceeding itself, but by harassing them and making false representations as to the "debt," which plaintiffs define as the

---

[11]    In an more recent unpublished opinion, the Fifth Circuit held that a foreclosure is not "*per se* FDCPA debt collection." *Brown*, 243 Fed.Appx. at 35.

$317,000 loan that they received from Flagstar.[12]  Plaintiffs thus adequately allege that defendants engaged in collection of a debt apart from initiation of the foreclosure itself, and the Court need not decide whether that foreclosure could also constitute collection of a debt.  *See Castrillo v. American Home Mortg. Servicing, Inc.*, 670 F.Supp.2d 516, 525 (E.D. La. 2009) (applying FDCPA when defendant's involvement went "beyond simply initiating foreclosure proceedings"); *Rousseau v. Bank of New York*, No. 08-00205, 2009 WL 3162153, at *9 (D. Colo. Sept. 29, 2009) (not deciding whether foreclosure constituted collection of a debt under the FDCPA when plaintiffs alleged that defendants unlawfully communicated with them in an attempt to collect "the debt").

Defendants also argue that plaintiffs have not adequately pleaded specific facts to support their allegations that defendants violated the FDCPA.  In the complaint, plaintiffs allege that defendants Dean Morris, LLP and Courteau contacted them on multiple occasions between April 2008 and "the present" in an attempt to collect the debt.[13]  Plaintiffs allege that the defendants "time and time again . . . refused to provide any documentation of the debt."[14]  Further, plaintiffs allege that

---

[12]    R. Doc. 1. at ¶158.

[13]    *Id*. at ¶161.

[14]    *Id*.

15

defendants "tried to intimidate" plaintiffs into leaving the property by threatening them with immediate eviction before a requisite ninety-day period had expired.[15]  Finally, plaintiffs allege that defendants "repeatedly" sent them "threatening letters."[16]

Plaintiffs first allege that defendants violated 15 U.S.C. § 1692d, which prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The statute also sets out examples of harassment or abuse, including "[t]he use of obscene or profane language," § 1692d(2), and "[c]ausing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," § 1692d(5).  Plaintiffs do not set out specific facts that support their claim that defendants' debt collection activities constitute harassment or abuse under this statute.  The FDCPA does not prohibit a debt collector from contacting a debtor multiple times in an attempt to collect a legitimate debt. *See McVey v. Bay Area Credit Service*, No. 4:10-CV-359-A, 2010 WL 2927388, at *2-3 (N.D. Tex. July 26, 2010) (multiple phone calls per week seeking payment of debt did not constitute harassment or abuse).  Here, the only communications

---

[15]    *Id.* at ¶162.

[16]    *Id.* at ¶163.

16

that plaintiffs allege they received from defendants are
"threatening letters," but plaintiffs do not state the contents
of these letters.  Rather, plaintiffs merely assert that
defendants' communications were an attempt to "intimidate" them.
These general and conclusory allegations are inadequate.

Plaintiffs also allege that defendants violated 15 U.S.C. §
1692e, which prohibits the use of "any false, deceptive, or
misleading representation or means in connection with the
collection of any debt."  Plaintiffs claim that defendants
violated § 1692e  generally, but to determine whether plaintiffs
have alleged sufficient facts to state a claim under that
section, the Court will look to the subsections under which
plaintiffs make specific claims.  Plaintiffs first assert that
defendants violated § 1692e(5), which states that the prohibition
on false or misleading representations in connection with the
collection of a debt includes "[t]he threat to take any action
that cannot legally be taken or that is not intended to be
taken."  Plaintiffs fail to state a claim under this section
because they fail to state a plausible factual basis that
defendants threatened illegal action.  They conclusorily refer to
a ninety-day "moratorium" on evictions in Orleans parish,[17] but
there is no allegation of who issued the moratorium, what conduct
it applied to, or how it applied to defendants.  Plaintiffs'

---

[17]   R. Doc. 1 at ¶162.

17

allegation that defendants threatened them with immediate eviction before the end of this alleged ninety-day period suffers from the same defect.

Plaintiffs also allege that defendants violated § 1692e(7), which prohibits "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the customer." Plaintiffs point to no facts suggesting that defendants violated this provision, however, and plaintiffs' claim under § 1692e(7) must be dismissed.

Additionally, plaintiffs allege that defendants violated § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f(6), which specifically regulates the enforcement of security interests, prohibits:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

Plaintiffs have not stated a claim under § 1692f(6)(A) because they have not specifically alleged that any nonjudicial action was threatened. Plaintiffs' claims under § 1692f must therefore be dismissed.

18

For these reasons, the Court dismisses plaintiffs' FDCPA claims.

C.   *Federal Unfair Trade Practices*

Plaintiffs also allege that the conduct of "Flagstar, its attorneys and agents" constitutes "unfair or deceptive acts or practices, including [Flagstar's] practice of leading borrowers to believe that it will modify their mortgage loans, offer them short sales and/or other MHAAP [Making Home Affordable Alternatives Program] relief."[18]  Plaintiffs further allege that "Flagstar's conduct" violates "federal unfair trade practices legislation in both Title 12 and Title 15 of the United States Code."[19]

To the extent that these allegations are at all applicable to defendants Dean Morris, LLP and Courteau, who were Flagstar's attorneys in the foreclosure action, the allegations fail to state a claim for relief.  Plaintiffs do not state how Dean Morris and Courteau violated federal trade practices laws and do not specify which laws defendants purportedly violated.  *See Flicher v. BAC Home Loan Servicing*, No. 10-1902, slip op. at 6 (E.D. La. Nov. 17, 2010) (identical federal unfair trade practices allegations did not state a claim).  Moreover, there is

---

[18]    R. Doc. 1 at ¶168.

[19]    *Id.* at ¶171.

19

no private right of action under the Federal Trade Commission Act, 15 U.S.C. §§41-58. *Norris v. Fairbanks Capital Corp.*, 178 F. App'x 401, 403 (5th Cir. 2006); *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978).  Thus, plaintiffs' federal trade practices claims against Dean Morris and Courteau must be dismissed.

D.   *Duty of Good Faith and Fair Dealing and Negligence*

      Plaintiffs also allege that Dean Morris, LLP and Courteau breached their duty of good faith and fair dealing to plaintiffs and were negligent.  Under Louisiana law, however, an attorney does not a duty to his or her client's adversary when acting on the client's behalf. *Montalvo v. Sondes*, 637 So.2d 127, 130 (La. 1994).  Thus, a non-client "cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation." *Id.*  This appears to be what plaintiffs are attempting to do.  Dean Morris and Courteau represented Flagstar in the foreclosure proceeding, and they did not owe professional duties to plaintiffs. *See Flicher v. BAC Home Loan Servicing*, No. 10-1902, slip op. at 9-10 (E.D. La. Nov. 17, 2010) (dismissing duty of good faith and fair dealing and negligence claims on these grounds).

      Further, under La. Civ. Code art. 1983, the duty of good faith and fair dealing is implied in every contract. *Adams v.*

20

*Autozoners, Inc.*, No. 98-2336, 1999 WL 744039, at *7 (E.D.La. Sept. 23, 1999).  No covenant of good faith and fair dealing can be implied, however, when there is no contract between a plaintiff and a defendant.  *Id.*  In this case, plaintiffs do not allege that a contract exists between plaintiffs and Dean Morris, LLP or between plaintiffs and Courteau.  Thus, Dean Morris and Courteau did not owe plaintiffs a duty of good faith and fair dealing, and plaintiffs' claim under that theory must be dismissed.

E.   *Detrimental Reliance*

Plaintiffs also assert a claim for "justifiable reliance" against Dean Morris, LLP and Courteau.  A claim for detrimental reliance under Louisiana law has three elements: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance."  *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, p. 31 (La. 4/12/05), 907 So.2d 37, 59.  Here, plaintiffs assert that they relied on Flagstar's representation that it "was interested in amicable resolution of the matter" and "would consider approving a loan modification to Plaintiffs."[20] Plaintiffs further assert that they relied on Flagstar's representation that it would not go forward with the scheduled

--------

[20]    R. Doc. 1 at ¶287.

21

sale of the property.[21]   These representations were allegedly made by Flagstar, however, not by Dean Morris, LLP or Courteau. Therefore, plaintiffs have not stated a claim for detrimental reliance against Dean Morris or Courteau.  *See Flicher v. BAC Home Loan Servicing*, No. 10-1902, slip op. at 10 (E.D. La. Nov. 17, 2010) (dismissing detrimental reliance claim on identical grounds).

F.   *Louisiana Unfair Trade Practices Act*

Lastly, plaintiffs claim that Dean Morris, LLP and Courteau violated the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1401, *et seq.* (LUTPA).  LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  *Id.* § 51:1401(A).  The Act provides a private right of action to "[a]ny person who suffers any ascertainable loss of money or movable property . . . as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405."  *Id.* § 51:1409(A).  Plaintiffs fail to state the specific conduct that violates LUTPA or how the conduct caused them an ascertainable loss of money or movable property. Therefore plaintiffs' LUTPA claims are dismissed.

---

[21]    *Id.* at ¶304.

G.   *Fraud, Deceit, and Conspiracy*

Finally, plaintiffs allege that defendants committed fraud, conspired to commit fraud, and deceived plaintiffs.  Unlike plaintiffs' FDCPA claims, these claims must meet Rule 9(b), which require a plaintiff to plead the elements of fraud "with particularity."  In order to meet Rule 9(b), a plaintiff must: (1) specify the statements alleged to be fraudulent, (2) identify the speaker or author of the statements, (3) state when and where the statements were made, and (4) state why the statements were fraudulent.  *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009); *Herrmann Holdings, Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."  *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003).

Plaintiffs' fraud and related claims in this case do not satisfy Rule 9(b).  Plaintiffs have not specified the date or contents of any fraudulent statements by Dean Morris, LLP or Courteau.  Plaintiffs merely discuss defendants' alleged fraud, conspiracy, and deceit in general terms.  Thus, plaintiffs' fraud claims do not meet Rule 9(b) and must be dismissed.

**IV.  Conclusion**

For the foregoing reasons, the Court GRANTS defendants'
motion to dismiss and dismisses all of plaintiffs' claims against
Dean Morris, LLP and Candace Courteau.


New Orleans, Louisiana, this <u>12th</u> day of July, 2011.


_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE